UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VINCO VENTURES, INC, f/k/a EDISON NATION INC, *et al.*, | : |
| | : |
| Plaintiffs, | : |
| | : |
| v. | :   No. 5:20-cv-6577 |
| | : |
| MILAM KNECHT & WARNER, LLP, *et al.*, | : |
| | : |
| Defendants. | : |

**O P I N I O N**
**Motion to Dismiss for Failure to State a Claim, ECF No. 32 – Granted in part and Denied in part**

**Joseph F. Leeson, Jr.**                                          **September 27, 2021**
**United States District Judge**

## I.     INTRODUCTION

This case involves claims by Plaintiffs[1] against Defendants[2] that arise from the filing of

a lawsuit in California and various business transactions that underlie that California Lawsuit.

Plaintiffs claim that the California lawsuit was frivolous and that defamatory statements made in

conjunction with that lawsuit resulted in harmful effects to Plaintiffs, some of which are

domiciled Pennsylvania.  Plaintiffs assert several claims against the named Defendants,

including abuse of process, trade libel, civil extortion, conspiracy, claims under the California

Unfair Competition Law ("UCL"),  and defamation.  Defendants Gerald Whitt ("GWhitt"),

---

[1]      Plaintiffs Vinco Ventures, Inc., formerly known as Edison Nation, Inc., Christopher B. Ferguson ("CFerguson"), Phillip McFillin, Kevin Ferguson ("KFerguson"), and Brett Vroman.
[2]      Defendants Milam Knecht & Warner, LLP, Michael D. Milam, Gerald Whitt, Alexander Whitt, David Knecht, Rex Ours, Matthew Whitt, Christopher Whitt, Deborah Milam, Tiffany W. Tai, and John Does 1-50.

Alexander Whitt ("AWhitt"), Matthew Whitt ("MWhitt"), Christopher Whitt ("CWhitt"), and Deborah Milam ("DMilam") collectively[3] move to dismiss Plaintiff's Amended Complaint for lack of personal jurisdiction, improper venue, and failure to state a claim.

Following a review of Plaintiffs' Amended Complaint, the Whitt-DMilam Defendants' motion to dismiss is granted in part and denied in part as more fully set forth below.

## II.    BACKGROUND

The background is taken, in large part, from the allegations in Plaintiffs' Amended Complaint.  Plaintiff Vinco Ventures was formerly known as Edison Nation, Inc. ("Edison"), and consistent with the parties' briefing, it is referred to as Edison throughout this Opinion.  Edison, through its subsidiaries, SRM Entertainment Limited (HK) ("SRM") and CBAV1, LLC ("CBAV1"), engaged in the manufacture and sale of consumer products.  *See* Amend. Compl. ¶ 36.  Edison is organized under the laws of Nevada, and its principal place of business is in Pennsylvania.  *See id.* ¶ 2.  Cloud b is a company that engaged in the sale of children's sleep aid toys.  *See id.* ¶ 18.  Cloud b is incorporated in California with its principal place of business in the same.  *See* Resp. 2, ECF No. 34.

On or about June 4, 2018, Edison, through its subsidiary, CBAV1, purchased a loan that was secured by all of the assets of Cloud b.  *See id.* ¶ 37.  On October 24, 2018, Edison purchased approximately 72.15% of Cloud b's shares.[4]  *See id.* ¶ 39.  In early 2019, Edison learned that Cloud b's financial records could not be audited because they were "unreliable" and "unsubstantiated."  *See id.* ¶ 40.  Accordingly, Edison foreclosed on Cloud b's assets, exercising

---

[3]    Collectively, these Defendants are referred to as the Whitt-DMilam Defendants.
[4]    Following this purchase, Defendants GWhitt, AWhitt, MWhitt, CWhitt, MMilam, and Knecht collectively owned the remaining minority share of Cloud b.  *See* Am. Compl. ¶ 104. This group is referred to as the "minority shareholders."

its right under the terms of the loan agreement. *See id.* ¶ 41.  On February 11, 2019, Edison

Nation, through CBAV1, purchased those foreclosed assets for $2,000,000. *See id.* ¶ 42.

Edison claims that Cloud b's minority shareholders engaged in actions to defraud Edison

between 2011 and 2018. *See id.* ¶ 46.  From 2011 to 2013, Plaintiffs allege that certain

Defendants caused Cloud b to pay $5,621,713 in shareholder distributions, during a period where

the net income of Cloud b was only $5,121,626. *See id.* ¶ 47.  From 2013 to 2018, Plaintiffs

allege that some Defendants collected in excess of $3,000,000 in shareholder distributions during

a period where Cloud b had losses of approximately $10,878,328. *See id.* ¶ 51.  Edison also

claims that Defendant Milam, Knecht, and Warner LLP ("MKW"), Cloud b's accounting firm,

was preparing false or inaccurate financial reports for Cloud b. *See id.* ¶¶ 49-50.  These alleged

activities are discussed in more detail below.

### A.      Cloud b Takeover Scheme

Plaintiffs allege that GWhitt conspired with other Defendants in an effort to perform a

takeover of Cloud b. *See id.* ¶¶ 65, 67.  In approximately November of 2017, Cloud b was

indebted to GWhitt for approximately $729,500 pursuant to loans secured by Cloud b's assets.

*See id.* ¶ 69.  On November 22, 2017, Cloud b paid GWhitt $329,502.54 to satisfy one of the

outstanding loans. *See id.* ¶ 70.  At that same time, GWhitt requested that Cloud b's Chief

Financial Officer, Richard Brenner, wire him an additional $400,000 to satisfy the remaining

balance of the loans. *See id.*  In January of 2018, Cloud b's board acknowledged that GWhitt's

demand for the remaining balance of the loans would place Cloud b in "financial straits." *See id.*

¶ 71.  GWhitt's demand for repayment made it so Cloud b was unable to make payments for

inventory. *See id.* ¶ 72.  Around that same time, GWhitt directed Cloud b to stop making

payments on the loan it had with EWBank.  *See id.* ¶ 74.  Plaintiffs allege that GWhitt did so in an effort to devalue the EWBank loan so that he could purchase it at a discount.  *See id.* ¶ 75.

In late 2017 and early 2018, Edison showed interest in purchasing the assets of Cloud b through purchase of the EWBank loan.  *See id.* ¶ 84.  Plaintiffs allege that GWhitt did not want this purchase to occur, believing there was more money to be made by purchasing the EWBank loan himself.  *See id.* ¶¶ 85-86.  A representative of EWBank met with CFerguson, the CEO of Edison, to discuss purchasing the Cloud b loan that EWBank held.  *See id.* ¶¶ 91-93.  CBAV1, Edison's subsidiary, agreed to pay $500,000 for the loan.  *See id.* ¶ 94.  On June 4, 2018, the purchase of the loan was effectuated.  *See id.* ¶ 95.  As part of the agreement, SRM, another Edison subsidiary, agreed to finance Cloud b's purchase orders for approximately $1,750,000. *See id.* ¶ 94.

From May 2018 until February 2019, SRM made payments under that agreement totaling $2,888,350, and it received $1,138,564 in return, which left an unpaid balance.  *See id.* ¶ 96. Plaintiffs allege that, from June 2018 to December 2018, CBAV1 and SRM loaned approximately $2,227,457 to Cloud b.  *See id.* ¶ 97.  Around August 2018, Edison offered to purchase 100% of Cloud b's stock for a total value of $3,000,000 to be paid in the form of Edison shares.  *See id.* ¶ 98.  Only one shareholder, Rex Ours, agreed to sell his shares on the terms offered by Edison.  *See id.* ¶ 101.  On October 24, 2018, Edison purchased approximately 72.15% of Cloud b's stock.  *See id.* ¶ 104.  The remaining minority shareholders[5] held the remaining 27.85%.  *See id.*

---

[5]     GWhitt, AWhitt, CWhitt, MWhitt, MMilam and Knecht.

### B.     Cloud b's Financial Statements and Article 9 Sale

In or around February of 2019, Plaintiffs noticed issues with Cloud b's financial records, which were unable to be audited.  *See id.* ¶ 106.  At that time, Plaintiffs decided to foreclose on Cloud b's assets.  *See id.*  CBAV1 purchased Cloud b's assets at an Article 9 sale for $2,000,000.  *See id.* ¶ 107.  At the time of that purchase, a balance of $480,000 remained on the EWBank loan.  *See id.*  Over the period beginning May 2018 and ending February 2019, Edison and its subsidiaries allege that they lost approximately $4,300,000.  *See id.* ¶ 108.

### C.     Post-Article 9 Sale

After the Article 9 Sale of Cloud b's assets, GWhitt and AWhitt requested corporate records and Cloud b emails for the period March 2019 to November 2019.  *See id.* ¶ 120.  On May 11, 2019, McFillin provided GWhitt access to the requested documents.  *See id.* ¶ 122.  Despite this production, GWhitt continued to demand corporate records from members of the Cloud b board.  *See id.* ¶  125.  In June 2019, Cloud b hired Ajay Gupta to investigate Cloud b's path to insolvency.  *See id.* ¶ 127.  At a board meeting in November 2019, a vote was held to voluntarily dissolve Cloud b.  *See id.* ¶  131.  The minority shareholders voted against the measure, and the vote to dissolve the company failed.  *See id.*

### D.     Filing of the California Lawsuit

In or around June 2018, GWhitt and AWhitt engaged Tiffany W. Tai, a California attorney.  *See id.* ¶ 111.  Tai was engaged to develop a strategy for the minority shareholders of Cloud b to recover against Edison and CBAV1.  *See id.* ¶ 113.  On October 27, 2020, the minority shareholders of Cloud b filed suit with Tai as their attorney.[6]  *See id.* ¶ 53.  The

---

[6]     This lawsuit is referred to as the "California Lawsuit" and the complaint therein is referred to as the "California Complaint."

California Lawsuit named Edison, CBAV1, SRM, CFerguson, Linda Suh, Jeff Johnson, Richard Brenner, McFillin, KFerguson, and Vroman. *See id.* ¶ 134. Therein, the minority shareholders alleged claims for fraudulent concealment, breach of fiduciary duty, breach of contract, breach of confidence, intentional misrepresentation, negligent misrepresentation, unfair business practices, civil conspiracy, and breach of fiduciary duty. *See id.* Plaintiffs allege that the California Lawsuit is a misuse of process, which was designed to extort $8,000,000 from Plaintiffs. *See id.* ¶ 136. Moreover, Plaintiffs allege that the California Complaint contains "defamatory statements" regarding Plaintiffs. *See id.* ¶ 195. Beyond their publication in the California Complaint itself, Plaintiffs allege that these defamatory statements were published to third parties. *See id.* ¶ 196.

### E. Alleged Defamatory Statements

Plaintiffs allege that GWhitt made the following defamatory statements:

(a) Edison Nation and/or CFerguson and/or McFillin engaged in a wrongful conduct in conspiring to take over Cloud b through its subsidiary's purchase of the EWBank Note in violation of a certain NDA; (b) Edison Nation defrauded the creditors of Cloud b, and the Whitt-Tai Complaint Plaintiffs, as minority shareholders, by promising to pay all of Cloud b's creditors as part of the purchase of 72% of Cloud b's stock; (c) Edison Nation's subsidiary CBAV1 did not own the Cloud b Assets; (d) GWhitt and other Defendants were not notified of the Article 9 sale scheduled for February 11, 2019; (e) Edison Nation engaged in conduct intentionally adverse to Cloud b, its creditors and minority shareholders; (f) Cloud b should not hire Kathy Tyler as an attorney for Cloud b, in or around March 2019, because "she was an idiot"; (g) Edison Nation promised that it would pay the unsecured creditors of Cloud b; (h) Defendants sustained in excess of $8,000,000 in damages as a result of Plaintiff's wrongful conduct; (i) other false statements and claims set forth in the Whitt-Tai Complaint which were made and published to third parties hereinafter identified . . . .

*See id.* ¶ 197.

Additionally, Plaintiffs allege that these defamatory statements were made to the following individuals:

(a) Tai, Cloud b's counsel in or around 2018 through the present; (b) Ajay Gupta, Cloud b's counsel, in or around August 2019 through December 2019; (c) Kathy Tyler, Cloud b's counsel, in or around 2017 through 2019; (d) the US Trustee in the Cloud b Bankruptcy ("UST"), in or around November 2020; (e) Lynn E. Feldman, Cloud b's Ch. 7 Trustee ("Cloud b Trustee"), in or around November 2020 through in or around December 2020; (f) Paul Maschmeyer, Esquire ("Maschmeyer"), the attorney for Cloud b Trustee from November 2020 through in or around December 2020; (g) Dave P. Adams, CBAV1's Ch. 11 Bankruptcy Trustee (the "CBAV1 Trustee"); (h) to various unsecured creditors of Cloud b from November 2020 through in or around December 2020; and (i) to investors of Edison Nation and the Securities and Exchange Commission.

*See id.* ¶ 198.

### F.   Plaintiffs' Claims

Based on these allegations, Plaintiffs allege the following claims:

Count I:  Intentional Misrepresentation  (Edison v. MKW, MMilam, Knecht, Ours, and JDoes);

Count II:  Negligent Misrepresentation (Edison v. MKW, MMilam, Knecht, Ours, and JDoes);

Count III:  Negligence (Edison v. MKW, MMilam, Knecht, Ours, and JDoes);

Count IV:  Conspiracy to Abuse Process, Unfair Business Practices, Civil Extortion, Trade Libel, and Defamation (Plaintiffs v. GWhitt, AWhitt, CWhitt, MWhitt, MMilam, DMilam, and Knecht);

Count V:  Unfair Business Practices (Plaintiffs v. GWhitt, AWhitt, CWhitt, MWhitt, MMilam, DMilam, and Knecht and JDoes);

Count VI:  Abuse of Process (Plaintiffs v. Tai, GWhitt, AWhitt, CWhitt, MWhitt, MMilam, DMilam, and Knecht);

Count VII:  Civil Extortion  (McFillin v. GWhitt);

Count VIII:  Trade Libel (Edison v. Tai, GWhitt, AWhitt, CWhitt, MWhitt, MMilam, DMilam, Knecht, and JDoes);

Count IX:  Defamation (CFerguson v. Tai, GWhitt, AWhitt, CWhitt, MWhitt, MMilam, DMilam, Knecht, and JDoes); and

Count X: Defamation (McFillin v. Tai, GWhitt, AWhitt, CWhitt, MWhitt, MMilam, DMilam, Knecht, and JDoes);

On April 12, 2021, the Whitt-DMilam Defendants moved to dismiss the Amended Complaint for lack of personal jurisdiction, improper venue, and for failure to state a claim.[7]  *See* Mot., ECF No. 30.  Following a series of responses and replies, the motion is ready for review. *See* Resp.; Reply, ECF No. 39.

## III.   LEGAL STANDARDS AND APPLICABLE LAW

### A.  Motion to Dismiss for Lack of Personal Jurisdiction – Review of Applicable Law

A motion to dismiss a pleading for lack of personal jurisdiction is properly raised under Federal Rule of Civil Procedure 12(b)(2).  A Rule 12(b)(2) motion "is inherently a matter which requires resolution of factual issues outside the pleadings, i.e. whether in personam jurisdiction actually lies." *Patterson ex rel. Patterson v. F.B.I.*, 893 F.2d 595, 603 (3d Cir. 1990) (quoting *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984)).  "Unlike a Rule 12(b)(6) motion, the Court's review of a Rule 12(b)(2) motion is not limited to the face of the pleadings and the Court may rely on sworn affidavits submitted by the parties or other competent evidence that supports jurisdiction. *Lutz v. Rakuten, Inc.*, 376 F. Supp. 3d 455, 463 (E.D. Pa. 2019) (citing *Patterson*, 893 F.3d at 603-04).  Where a defendant challenges the existence of personal jurisdiction, the plaintiff bears the burden of making a prima facie showing that jurisdiction exists. *Aetna Inc. v. Insys Therapeutics, Inc.*, 324 F. Supp. 3d 541, 550 (E.D. Pa.

---

[7]     Defendant Tai's motion to dismiss for lack of personal jurisdiction, filed separately, was granted by this Court.  *See* ECF Nos. 42, 43.

2018) (citing *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007)). "The plaintiff meets this burden by 'establishing with reasonable particularity sufficient contacts between the defendant and the forum state to support jurisdiction.'" *Hepp v. Facebook, Inc.*, No. CV 19-4034, 2020 WL 4437036, at *3 (E.D. Pa. Aug. 3, 2020) (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Assoc.*, 819 F.2d 434, 437 (3d Cir. 1987)).

A plaintiff may not "rely on the bare pleadings alone in order to withstand a defendant's motion to dismiss for lack of personal jurisdiction." *Time Share Vacation Club*, 735 F.2d at 66 n.9 (citing *Int'l Assoc. of Machinists & Aerospace Workers v. Nw. Airlines, Inc.*, 673 F.2d 700 (3d Cir. 1982)). "Instead, the 'plaintiff must respond with actual proofs, not mere allegations.'" *Hepp*, 2020 WL 4437036, at *3 (quoting *Time Share Vacation Club*, 735 F.2d at 66 n.9). In responding to a challenge to personal jurisdiction, "plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc., v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). Where a court reviewing a Rule 12(b)(2) motion declines to hold an evidentiary hearing, "the Court is bound only to consider Plaintiff's Complaint and supporting evidence." *Laverty v. Cox Enterprises, Inc.*, No. CV18-1323, 2019 WL 351905, at *1 (D.N.J. Jan. 29, 2019) (citing *O'Connor*, 496 F.3d at 316). That is to say, where a district court declines to "hold an evidentiary hearing . . . plaintiff need only establish a prima facie case of personal jurisdiction." *O'Connor*, 496 F.3d at 316 (quoting *Miller Yacht Sales*, 384 F.3d at 97).

**B.     Personal Jurisdiction – Review of Applicable Law**

Federal Rule of Civil Procedure 4(k) provides that personal jurisdiction in a United States District Court is established in accordance with the law of the state in which the District Court sits. *See* FED. R. CIV. P. 4(k)(1)(A) ("Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant:  (A) who is subject to the jurisdiction of a

court of general jurisdiction in the state where the district court is located . . . ."); *see also*

*O'Connor*, 496 F.3d at 316.  Therefore, this Court looks to the law of Pennsylvania, and

Pennsylvania's long-arm statute in particular, to determine whether Plaintiffs can establish the

existence of personal jurisdiction over Tai.

Pennsylvania's long-arm statute provides that "the jurisdiction of the tribunals of this

Commonwealth shall extend . . . to the fullest extent allowed under the Constitution of the

United States and may be based on the most minimum contact with this Commonwealth allowed

under the Constitution of the United States."  42 PA. CONS. STAT. § 5322(b);  *Mellon Bank (E.)*

*PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1221 (3d Cir. 1992)  ("The Pennsylvania [long-arm]

statute permits the courts of that state to exercise personal jurisdiction over nonresident

defendants to the constitutional limits of the due process clause of the fourteenth amendment."

(citing *North Penn Gas Co. v. Corning Nat. Gas Corp.*, 897 F.2d 687, 688-90 (3d Cir. 1990))).

"Accordingly, in determining whether personal jurisdiction exists," this Court must ask

"whether, under the Due Process Clause [of the Fourteenth Amendment], the defendant has

'certain minimum contacts with . . . [Pennsylvania] such that the maintenance of the suit does not

offend traditional notions of fair play and substantial justice.'"  *O'Connor*, 496 F.3d at 316-17

(quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  "These basic due process

principles are reflected in the two recognized types of personal jurisdiction"—general

jurisdiction and specific jurisdiction.  *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007).  A

court may exercise *specific* jurisdiction where a "plaintiff's claim arise[s] from the defendant's

contacts with the forum in which the court sits."  *Hepp*, 2020 WL 4437036, at *3 (citing

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413-14 (1984));  *Marten*, 499

F.3d at 296 ("Specific jurisdiction exists when the claim arises from or relates to conduct purposely directed at the forum state.").

### 1.      Traditional "Minimum Contacts" Test – Review of Applicable Law

The Third Circuit has outlined a three-part inquiry to determine whether specific jurisdiction exists:

> First, the defendant must have "'purposefully directed' his activities" at the forum. *Burger King Corp. v. Rudzewicz,* 471 U.S. 472 (1985) (quoting *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774 (1984)).   Second, the plaintiff's claim must "arise out of or relate to" at least one of those specific activities. *Helicopteros,* 466 U.S. at 414.   Third, courts may consider additional factors to ensure that the assertion of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'" *Burger King,* 471 U.S. at 476 (quoting *Int'l Shoe,* 326 U.S. at 320).

*Marten*, 499 F.3d at 296.

To satisfy the first element of the inquiry, "[t]here must be a 'deliberate targeting of the forum'" *Lutz*, 376 F. Supp. 3d at 463-64 (quoting *O'Connor*, 496 F.3d at 317).  "Moreover, 'the defendant must have purposefully avail[ed] itself of the privilege of conducting activities within the forum.'" *Lutz*, 376 F. Supp. 3d at 464 (quoting *O'Connor*, 496 F.3d at 317).  With respect to the second element of the inquiry, the "analysis should hew closely to the reciprocity principle upon which specific jurisdiction rests"—that is, the relatedness between the benefits and obligations a forum state's law extends to an out-of-state defendant as a result of conduct directed at the forum state. *Id.* at 464  (quoting *O'Connor*, 496 F.3d at 323).  When the first two elements of the inquiry are satisfied, the existence of minimum contacts is established, making "jurisdiction presumptively constitutional." *O'Connor*, 496 F.3d at 324.  In such circumstances, courts must then consider whether the exercise of jurisdiction "would otherwise comport with the traditional notions of fair play and substantial justice," and a "defendant 'must present a

compelling case that the presence of some other considerations would render jurisdiction unreasonable.'"  *Id.*  (quoting *Burger King,* 471 U.S. at 477).

## 2.    *Calder* "Effects Test" – Review of Applicable Law

Alternatively, "a court may exercise personal jurisdiction over a nonresident defendant who commits an intentional tort by certain acts outside the forum which have a particular type of effect upon the plaintiff within the forum."  *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265 (3d Cir. 1998) (citing *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141 (3d Cir. 1992)).  The effects test allows a plaintiff to "demonstrate a court's jurisdiction over a defendant even when the defendant's 'contacts with the forum alone . . . . are too small to comport with the requirements of due process' under [the] traditional analysis."  *Marten*, 499 F.3d at 297 (citing *IMO Indus.*, 155 F.3d at 259).

To establish personal jurisdiction under the effects test, the following three elements must be satisfied:

> First, the defendant must have committed an intentional tort.  Second, the plaintiff must have felt the brunt of the harm caused by that tort in the forum, such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of the tort.  Third, the defendant must have expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity.

*IMO Indus.*, 155 F.3d at 256.

"[O]nly if the 'expressly aimed' element of the effects test is met need [the court] consider the other two elements."  *Marten*, 499 F.3d at 297 (citing *IMO Indus.,* 155 F.3d at 266).  "To establish that the defendant 'expressly aimed' his conduct, the plaintiff has to demonstrate the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum."  *Id.* at 297-98 (quoting *IMO Indus.*, 155 F.3d at 266).  "If a

plaintiff fails to show that the defendant 'manifest[ed] behavior intentionally targeted at and focused on' the forum, . . . the plaintiff fails to establish jurisdiction under the effects test." *Id.* at 298 (quoting *IMO Indus.,* 155 F.3d at 265).

The effects test "prevents a defendant from being haled into a jurisdiction solely because the defendant intentionally caused harm that was felt in the forum state if the defendant did not expressly aim his conduct at that state." *Ciolli v. Iravani*, 651 F. Supp. 2d 356, 365 (E.D. Pa. 2009) (quoting *Marten*, 499 F.3d at 297). The "mere fact that a plaintiff suffers harm in the forum state is not enough to give rise to personal jurisdiction in that state." *Weiser L. Firm v. Hartleib*, No. CV 19-2728-KSM, 2020 WL 5993628, at *10 (E.D. Pa. Oct. 9, 2020) (citing *Marten*, 499 F.3d at 297). "Even if a defendant's conduct would cause foreseeable harm in a given state, such conduct does not necessarily give rise to personal jurisdiction in that state." *Marten*, 499 F.3d at 297. "[T]he foreseeability that is critical to due process analysis is . . . that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *See id.* (quoting *World–Wide Volkswagen,* 444 U.S. at 297). Additionally, "[s]imply asserting that the defendant knew the plaintiff's principal place of business was located in the forum [is] insufficient in itself to meet [the expressly aimed] requirement." *Weiser Law Firm*, 2020 WL 5993628, at *10 (quoting *IMO Indus.,* 155 F.3d at 266) (alterations in original).

### C.   Agency Theory – Review of Applicable Law

While "Pennsylvania law permits that jurisdiction may be based on the acts of an agent, the mere fact that a principal-agent relationship exists does not confer personal jurisdiction over a nonresident principal." *Rychel v. Yates*, No. CIV.A. 09-1514, 2011 WL 1363751, at *11 (W.D. Pa. Apr. 11, 2011) (citing *Scott v. Lackey,* 1:02-cv-1586, 2010 WL 272275, at *9 n.18 (M.D. Pa.

Jan. 20, 2010); *see also Myelle v. Am. Cyanamid Co.*, Civ. No. 92–5243, 1993 WL 93422, at *6 (E.D. Pa. Mar. 31, 1993) ("The proposition that the mere existence of an agency relationship satisfies the minimum contacts requirement, without more, holds no water.").  Thus, "irrespective of any agency relationship, the Court must engage in a constitutional inquiry to determine whether Defendants are properly haled into this forum." *Rychel*, 2011 WL 1363751, at *11 (citing *Lackey*, 2010 WL 272275 at *11).

"Under Pennsylvania law, to establish the existence of an agency relationship, a party must show that: (1) there was a manifestation by the principal that the agent would act for it; (2) the agent accepted such an undertaking; and (3) the principal retained control of the endeavor." *See id.* (citing *Castle Cheese, Inc. v. MS Produce, Inc.*, Civ. A. No. 04-878, 2008 WL 43728567, at *8 (W.D. Pa. Sept. 19, 2008)).  "The burden of establishing the existence of an agency relationship rests on the party making the assertion."  *See id.* (citing *Goodway Mktg., Inc. v. Faulkner Advert. Assocs., Inc.*, 545 F. Supp. 263, 267 (E.D. Pa. 1982)).

## D.    Jurisdictional Discovery – Review of Applicable Law

"Courts should grant jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.'"  *Neopart Transit, LLC v. CBM N.A. Inc.*, 314 F. Supp. 3d 628, 646 (E.D. Pa. 2018) (citing *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003)).  However, "a court may deny jurisdictional discovery where the plaintiff has failed to meet its burden of making out a threshold *prima facie* case of personal jurisdiction."  *Arch v. Am. Tobacco Co.*, 984 F. Supp. 830, 841 (E.D. Pa. 1997)  (citing *Rose v. Granite City Police Dep't*, 813 F. Supp. 319, 321 (E.D. Pa. 1993)).  Furthermore, "jurisdictional discovery is not warranted unless the plaintiff 'presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between [the party] and the forum state.'"  *Laverty*, 2019 WL 351905, at

*5 (quoting *Toys "R" Us*, 318 F.3d at 456)).  As a result, "a plaintiff may not undertake a fishing

expedition based only upon bare allegations, under the guise of jurisdictional discovery."

*Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 157 (3d Cir. 2010)

(citing *Belden Techs., Inc. v. LS Corp.*, 626 F. Supp. 2d 448, 459 (D. Del. 2009));  *see also*

*Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 108 n. 38 (3d Cir. 2015)

("[J]urisdictional discovery is not available merely because the plaintiff requests it.").

### E.      Motion to Dismiss for Improper Venue – Review of Applicable Law

Title 28 U.S.C. § 1391(b) provides that

> A civil action may be brought in--
>       (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>       (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>       (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

In adjudicating a motion to dismiss for improper venue, courts must "accept as true all of

the allegations in the complaint, unless those allegations are contradicted by the defendants'

affidavits." *See Bockman v. First Am. Mktg. Corp.*, 459 F. App'x 157, 158 n.1 (3d Cir. 2012)

(citing *Pierce v. Short Small's of Branson, Inc.*, 137 F.3d 1190, 1192 (10th Cir. 1998)).  In

evaluating the propriety of venue under § 1391(b)(2), a court must look not to "the defendant's

'contacts' with a particular district, but rather the location of those 'events or omission giving

rise to the claim . . . .'" *See Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d

Cir. 1994).  Moreover, § 1391(b)(2) "favors the defendant in a venue dispute by requiring that

the events or omissions supporting a claim be 'substantial.'" *See id.*  "Events or omissions that

might only have some tangential connection with the dispute in litigation are not enough." *See*

*id.* The statute "no longer requires a court to select the 'best' forum . . . ." *See id.* (citing *Setco Enters. v. Robbins*, 19 F.3d 1278, 1281 (8th Cir. 1994)).

  **F.**  **Motion to Dismiss for Failure to State a Claim – Review of Applicable Law**

  In rendering a decision on a motion to dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted).  Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim.  *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).  The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted.  *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

G.      **Choice of Law – Review of Applicable Law**

"The choice of law rules of the forum state . . . apply when a federal court is sitting in diversity." *Specialty Surfaces Int'l, Inc. v. Cont. Cas. Co.*, 609 F.3d 223, 229 (3d Cir. 2010) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).  In this case, the parties agree that Pennsylvania's choice of law rules apply to this matter.  *See* Mot. 26; *see also* Resp. 39.

Under Pennsylvania's choice of law rules, a court "must determine whether a real conflict exists between the respective laws."  *See Mzamane v. Winfrey*, 693 F. Supp. 2d 442, 467-68 (E.D. Pa. 2010) (citing *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007)).  "A real conflict exists only where the application of each state's substantive law produces a contrary result."  *Id.* at 468.  "If the same result would ensue under the laws of the forum state and those of the foreign jurisdiction, then no conflict exists, and the court may avoid the choice of law question altogether."  *Id.*  Moreover, where parties agree upon the law to be applied, a choice of law analysis is not necessary.  *See MacDonald v. Unisys Corp.*, 951 F. Supp. 2d 729, 737  (E.D. Pa. 2013) (citing *Zicherman v. Korean Air Lines Co.*, 516 U.S. 217, 228-29 (1996)).

H.      **Civil Conspiracy – Review of Applicable Law**[8]

In order to state a claim for civil conspiracy under Pennsylvania law, a plaintiff must allege "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage."  *See Miller v. Amazon.com Servs., Inc.*, --- F. Supp. 3d ---, 2021 WL 2388179, at *6 (E.D. Pa. June 11, 2021)

---

[8]     The parties agree that Pennsylvania law governs this claim, and accordingly, a choice of law analysis need not be undertaken.

(quoting *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 313 (3d Cir. 2003)).

A plaintiff must set forth "the period of the conspiracy, the object of the conspiracy, and the

certain actions of the alleged conspirators taken to achieve that purpose." *See Pinder v.*

*Kennelly*, Civ. A. No. 18-115 Erie, 2019 WL 1115892, at *3 (E.D. Pa. Mar. 11, 2019) (quoting

*Shearin v. E.F. Hutton Grp., Inc.*, 885 F.2d 1162, 1166 (3d Cir. 1989)).

## I.     Unfair Business Practices – Review of Applicable Law[9]

"Section 17200 [of California's Business and Professions Code], commonly referred to as

California's Unfair Competition Law ("UCL"), bans unfair business practices and authorizes

injunctive and restitutionary relief against '[a]ny person who engages . . . in unfair competition.'"

*Tidenberg v. Bidz.com, Inc.*, No. CV 08-5553 PSG (FMOx), 2009 WL 605249, at *3 (C.D. Cal.

Mar. 4, 2009) (citing Cal. Bus. & Prof. Code §§ 17200, 17203).  "[T]he UCL was neither

designed or intended to regulate claims of non-residents arising from conduct occurring entirely

outside of California." *Id.* (citing *Nw. Mortgage, Inc. v. Superior Court*, 72 Cal. App. 4th 214,

222 (Cal. Ct. App. 1999)).  "However, 'state statutory remedies may be invoked by out-of-state

parties when they are harmed by wrongful conduct occurring in California.'"  *Id.* (quoting *Nw.*

*Mortgage*, 72 Cal. App. 4th at 224-25).  "The critical issues here are whether the injury occurred

in California and whether the conduct of Defendants occurred in California." *Id.*  "If neither of

these questions can be answered in the affirmative," then a non-resident plaintiff lacks standing

under the UCL.  *See id.*

Unfair competition in the UCL is defined to include "any unlawful, unfair, or fraudulent

business act or practice and unfair, deceptive, untrue, or misleading advertising . . . ."  *See* Cal.

---

[9]     The parties agree that California law governs this claim, and accordingly, a choice of law
analysis need not be undertaken.

Bus. & Prof. Code § 17200.  A practice is "unlawful" under the UCL if it is "forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made."  *See Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838-39 (Aug. 16, 1994) (citing *People v. McKale*, 25 Cal. 3d 626, 632 (Cal. 1979)).  An "unfair" practice is "any practice whose harm to the victim outweighs its benefits."  *See id.* (citing *Motors, Inc. v. Times Mirror Co.*, 102 Cal. App. 3d 735, 740 (Cal. Ct. App. 1980)).  A practice is "fraudulent" if "members of the public 'are likely to be deceived'" by the practice.  *See id.* (quoting *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (Cal. 1992)).

### J.    Abuse of Process – Review of Applicable Law[10]

"The common law tort of abuse of process is defined as the perversion of legal process after it has begun 'primarily to accomplish a purpose for which it is not designed.'"  *See Ciolli*, 625 F. Supp. 2d at 296 (quoting *Werner v. Plater–Zyberk*, 799 A.2d 776, 785 (Pa. Super. Ct. 2002)).  "To state a claim for abuse of process under Pennsylvania law, a plaintiff must allege facts sufficient to show that 'the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed, and (3) harm has

---

[10]    In their reply, Defendants contend that there is a true conflict between the Pennsylvania and California standards for abuse of process.  *See* Reply 8.  Notwithstanding, a review of the substantive laws of each state shows that this is not the case.  Both states use a materially similar standard, requiring a showing that the process was used for a purpose other than that for which it was designed.  *Compare Ciolli*, 625 F. Supp. 2d at 296 (noting abuse means use "primarily to accomplish a purpose for which [process] is not designed" (quoting *Werner*, 799 A.2d at 785)), with *Brown v. Kennard*, 94 Cal. App. 4th 40, 44 (Cal. Ct. App. 2001) (noting abuse means use "for a purpose other than that for which the process was designed").  In addition, both jurisdictions employ similar litigation privileges to statements made in the regular course of judicial proceedings that bear relation to the proceedings itself.  *See Church Mut. Ins. Co. v. Alliance Adjustment Grp.*, 102 F. Supp. 3d 719, 730 (E.D. Pa. 2015) (quoting *Schanne v. Addis*, 121 A.3d 942, 947 (Pa. 2015)); *Brown*, 94 Cal. App. 4th at 44.  Thus, no real conflict exists between the substantive laws of both states on this claim, and this Court applies the law of the forum state to this claim.

been caused to the plaintiff.'" *See EMC Outdoor, LLC v. Stuart*, Civ. A. No. 17-5712, 2018 WL 3208155, at *3 (E.D. Pa. June 28, 2018) (quoting *Naythons v. Stradley, Ronon, Stevens & Young, LLP*, No. 07-4489 (RMB), 2008 WL 1914750, at *3 (E.D. Pa. Apr. 30, 2008)).

The tort is designed to prevent the "use of legal process as a tactical weapon to coerce a desired result that is not the legitimate object of the process." *See id.* (quoting *Al Hamilton Contracting Co. v. Cowder*, 644 A.2d 188, 191 (Pa. Super. Ct. 1994)).  A defendant's "bad or malicious intentions" are not enough; "[r]ather there must be an act or threat not authorized by the process, or the process must be used for an illegitimate aim such as extortion, blackmail, or to coerce or compel the plaintiff to take some collateral action." *See id.* (quoting *Al Hamilton Contracting*, 644 A.2d at 192).

"The torts of malicious prosecution and abuse of process are separate and distinct but often confused." *See Werner*, 799 A.2d at 785 (citing *Al Hamilton Contracting*, 644 A.2d at 191).  While abuse of process involves improper use of process *after* the suit has been initiated, malicious prosecution "arises when a party *institutes* a lawsuit with a malicious motive and lacking probable cause." *See id.* (citing *Hart v. O'Malley*, 781 A.2d 1211, 1219 (Pa. Super. Ct. 2001)).

Pennsylvania's judicial privilege provides "immunity for communications which are made in the regular course of judicial proceedings and are material to the relief sought." *See Church Mut. Ins.*, 102 F. Supp. 3d at 730 (quoting *Schanne*, 121 A.3d at 947).  "The privilege yields only when the communication is not issued as a matter of regular course during the proceedings or is not pertinent and material." *Id.* (citing *Bochetto v. Gibson*, 860 A.2d 67, 72–73 (2004) (noting attorney's transmission of complaint to a reporter was extrajudicial and not related to the proceedings)).

### K.    California Civil Extortion – Review of Applicable Law[11]

"California permits a cause of action 'for the recovery of money obtained by the wrongful threat of criminal or civil prosecution, [regardless of] whether the claim is denominated as extortion, menace, or duress.'"  *Wilson v. Ridgeway*, 20-cv-00381-PJH, 2020 WL 4590241, at *2 (N.D. Cal. Aug. 7, 2020) (quoting *Monex Deposit Co. v. Gilliam*, 666 F. Supp. 2d 1135, 1136 (C.D. Cal. 2009)).  "Extortion is the obtaining of property from another, with his or her consent, or the obtaining of an official act of a public officer, induced by wrongful use of force or fear, or under color of official right."  CAL. PENAL CODE § 518.  Fear, as it is used in this provision, may constitute a threat (1) "[t]o do an unlawful injury to the person or property of the individual threatened or of a third person;"  (2) "[t]o accuse the individual threatened, or a relative of his or her, or a member of his or her family, of a crime;" or (3) "[t]o expose, or to impute to him, her, or them a deformity, disgrace, or crime . . . ."  *See id.* § 519.

Courts to apply this standard make clear that a plaintiff must allege both a "civil or criminal prosecution with which defendant threatened [plaintiff]" and property "that defendants demanded plaintiff transfer to them."  *See Wilson*, 2020 WL 4590241, at *2.

### L.    Trade Libel – Review of Applicable Law[12]

Under Pennsylvania law,

Trade libel, also called "injurious falsehood," consists of the publication of a disparaging statement concerning the business of another and is actionable where:

---

[11]    The parties agree that California law governs this claim, and accordingly, a choice of law analysis need not be undertaken.

[12]    Plaintiffs contend that Pennsylvania law does not provide a cause of action for trade libel. This is incorrect.  *See Maverick Steel Co., L.L.C. v. Dick Corp./Barton Malow*, 54 A.3d 352, 354 (Pa. Super. Ct. 2012) (detailing elements of a "trade libel" claim under Pennsylvania law). Notwithstanding, as there appears to be no material difference between California and Pennsylvania law on the subject of trade libel, this Court applies the law of the forum to the substantive claim.  *Compare Maverick Steel*, 54 A.3d at 354, *with Rumble, Inc. v. Daily Mail & Gen. Trust PLC*, 459 F. Supp. 3d 1249, 1300 (C.D. Cal. 2020).

"(1) the statement is false; (2) the publisher either intends the publication to cause pecuniary loss or reasonably should recognize that publication will result in pecuniary loss; (3) pecuniary loss does in fact result; and (4) the publisher either knows that the publication is false or acts in reckless disregard of its truth or falsity."

*See Maverick Steel*, 54 A.3d at 354 (quoting *Pro Golf Mfg., Inc. v. Tribune Rev. News. Co.*, 809 A.2d 243, 246 (Pa. 2002)).

### M.   Defamation – Review of Applicable Law[13]

Under Pennsylvania Law, "[d]efamation, of which libel, slander, and invasion of privacy are methods, is the tort of detracting from a person's reputation, or injuring a person's character, fame, or reputation, by false and malicious statements."  *See Mzamane*, 693 F. Supp. 2d at 476 (quoting *Joseph v. Scranton Times L.P.*, 959 A.2d 322, 334 (Pa. Super. Ct. 2008)).  In order to establish a claim of defamation, a plaintiff must show:

(1) The defamatory character of the communication;
(2) Its publication by the defendant;
(3) Its application to the plaintiff;
(4) The understanding by the recipient of its defamatory meaning;
(5) The understanding by the recipient of it as intended to be applied to the plaintiff;
(6) Special harm resulting to the plaintiff from its publication; [and]
(7) Abuse of a conditionally privileged occasion.

*See* 42 PA. CONS. STAT. § 8343(a).

Once a plaintiff establishes these initial elements, the defendant bears the burden of showing (1) "the truth of the defamatory communication," (2) "the privileged character of the occasion on which it was published," or (3) "the character of the subject matter of defamatory comment as of public concern."  *See id.* § 8343(b).  "A statement is deemed to be defamatory 'if

---

[13]   In their response, Plaintiffs apply Pennsylvania law to their defamation claims.  *See* Resp. 40.  In their motion, Defendants note that both California and Pennsylvania law on defamation are similar.  *See* Mot. 39.  Additionally, Defendants go on to cite Pennsylvania defamation standards in support of their arguments.  *See id.* at 40.  Accordingly, because there is no material difference between the relevant laws of both states, and because the parties both cite to Pennsylvania defamation law to support their respective arguments, this Court analyzes the defamation claims under Pennsylvania law.

it tends to blacken a person's reputation or expose him to public hatred, contempt, or ridicule, or injure him in his business or profession.'" *Mzamane*, 693 F. Supp. 2d at 477 (quoting *Joseph*, 959 A.2d at 334).  "When communications tend to lower a person in the estimation of the community, deter third persons from associating with him, or adversely affect his fitness for the proper conduct of his lawful business or profession, they are deemed defamatory."  *See id.*

"[O]ne of the requirements of a defamation claim is to show 'special harm' resulting to the plaintiff from its publication."  *Pennoyer v. Marriott Hotel Servs., Inc.*, 324 F. Supp. 2d 614, 618 (E.D. Pa. 2004) (citing *Clemente v. Espinosa*, 749 F. Supp. 672, 677 (E.D. Pa. 1990)).  "The term 'special harm' is defined as 'actual damages which are economic or pecuniary losses.'"  *Id.* (citing *Sprague v. Am. Bar Ass'n*, 276 F. Supp. 2d 365, 368-69 (E.D. Pa. 2003)).  Notwithstanding, Pennsylvania allows a plaintiff to proceed without proof of special harm where the words constitute "defamation per se."  *See Mallory v. S & S Publishers*, 260 F. Supp. 3d 453, 365 (E.D. Pa. 2017).  "Defamation per se can be either words imputing (1) criminal offense, (2) loathsome disease, (3) business misconduct, or (4) serious sexual misconduct."  *Id.* (quoting *Synygy, Inc. v. Scott–Levin, Inc.*, 51 F. Supp. 2d 570, 580 (E.D. Pa. 1999)).

## IV.   DISCUSSION

The Whitt-DMilam Defendants move to dismiss Plaintiffs' Amended Complaint for lack of personal jurisdiction, improper venue, and failure to state a claim.  After a review of the allegations in the Amended Complaint and the supporting documents, this Court concludes that jurisdiction is appropriate over GWhitt.  Notwithstanding, Plaintiffs fail to carry their burden of establishing personal jurisdiction over the remaining Whitt-DMilam Defendants.  Accordingly, those Defendants are dismissed without prejudice.  Furthermore, this Court concludes that venue in this district is appropriate over the claims against GWhitt.

After reviewing the sufficiency of the allegations that support the claims against GWhitt, this Court concludes that Edison's trade libel claim, McFillin's defamation claim, and Plaintiffs' UCL claim may proceed as pleaded.  On the other hand, CFerguson's defamation claim, Plaintiffs' abuse of process claim; McFillin's civil extortion claim, and Plaintiffs' conspiracy claim are dismissed without prejudice.

### A.    Defendants' Personal Jurisdiction Challenge

Plaintiffs allege that this Court has personal jurisdiction over all of the Whitt-DMilam Defendants.  Primarily, Plaintiffs allege that GWhitt acted on behalf of or as an agent for the remaining Whitt-DMilam Defendants.  Therefore, Plaintiffs argue, if this Court finds personal jurisdiction is appropriate over GWhitt, this Court should similarly find personal jurisdiction appropriate over the remaining Whitt-DMilam Defendants.

While personal jurisdiction is typically measured on a claim-by-claim basis, the jurisdictional facts are common across all of the claims lodged against GWhitt.  Namely, the jurisdictional facts all relate to the filing of the California Lawsuit and the communications that GWhitt engaged in thereafter with individuals situated in Pennsylvania.  After a review of the Amended Complaint and supporting documents, this Court finds that jurisdiction in this forum is appropriately exercised over GWhitt.  Notwithstanding, as this Court explains *infra*, Plaintiffs have failed to meet their burden of establishing the appropriate exercise of agency jurisdiction over the remaining Whitt-DMilam Defendants.  Accordingly, while the case may proceed against GWhitt in this forum, it may not proceed against the remaining Whitt-DMilam Defendants.

### 1.    Traditional Test for Personal Jurisdiction over GWhitt.

Since Plaintiffs rely on GWhitt to establish the appropriateness of jurisdiction over the whole of the Whitt-DMilam Defendants, this Court begins by analyzing GWhitt's contacts with

the forum state.  *See Lutz*, 376 F. Supp. 3d at 463-64 (quoting *O'Connor*, 496 F.3d at 317).

Turning to Gwhitt's direct contacts with the forum state, there are few, if any, to count.  GWhitt

resides in California, and he asserts in his affidavit that he does not conduct any business in the

forum state.  *See* Mot. Ex. A. 1-2 ("Declr. of GWhitt"), ECF No. 30-3.

Plaintiffs do not dispute GWhitt's lack of direct contacts with the forum state, and

instead, Plaintiffs focus on GWhitt's conduct, undertaken in California, that was nonetheless

targeted at Pennsylvania.  While Plaintiffs associate these communications with "contacts," they

are more appropriately analyzed under the effects test.  Accordingly, although Plaintiffs fail to

show that GWhitt has minimum contacts with the forum state, this Court turns to analyze

whether jurisdiction is appropriate under the effects test.

### 2.    Effects Test

To establish that an exercise of personal jurisdiction is appropriate under the effects test,

Plaintiffs must sufficiently plead (1) that GWhitt committed an intentional tort, (2) that the brunt

of the resultant harm was felt in Pennsylvania, and (3) that GWhitt intentionally targeted her

behavior at Pennsylvania.  *IMO Indus.*, 155 F.3d at 256.  Here, Plaintiffs sufficiently establish all

three elements such that jurisdiction over GWhitt is appropriate.

Foremost, Plaintiffs plead that GWhitt engaged in multiple intentional torts, including

abuse of process, defamation, and trade libel.  Second, Plaintiffs allege that the brunt of the

resultant harm was felt in Pennsylvania.  Specifically, Plaintiffs allege that they suffered harm in

the form of lost business due to the statements made and published by GWhitt.

Finally, Plaintiffs sufficiently establish that GWhitt expressly aimed his conduct at

Pennsylvania.  First, Plaintiffs point to the California Lawsuit as evidence of GWhitt's targeting

of Pennsylvania because some of the defendants in that lawsuit are domiciled in Pennsylvania.

While the filing of the California Lawsuit alone is insufficient to establish that GWhitt targeted Pennsylvania, the Plaintiffs also point to actions taken by GWhitt beyond the filing of the complaint that were expressly aimed at Pennsylvania.  Primarily, Plaintiffs point to communications, in the form of emails and telephone calls, that GWhitt had with individuals in Pennsylvania.  *See, e.g.*, Am. Compl. Ex. 8 ("GWhitt Email").

GWhitt disputes that these communications are sufficient to establish jurisdiction over him.  However, when viewed in light of the allegations in the Amended Complaint, the communications from GWhitt to individuals in Pennsylvania show an express targeting of the forum.  By way of  example, GWhitt sent an email to Thomas Bielli, Cloud b's bankruptcy counsel, who was domiciled in Pennsylvania.  Therein, GWhitt provided a list of reasons why the Eastern District of Pennsylvania bankruptcy matter involving Cloud b should be dismissed, and he communicated his expectation that Bielli dismiss the bankruptcy action immediately.  *See* GWhitt Email 1-2.  When viewed in light of the allegations in the Amended Complaint, which are taken as true for the purpose of this motion, GWhitt purposefully reached into Pennsylvania—via this email sent to Bielli—with the intention that his actions effect a legal process operating within the forum state.  The email clearly states GWhitt's hope that, following receipt of this email, Bielli "will take the necessary actions to dismiss the Cloud b, Inc. bankruptcy immediately . . . ."  *See* GWhitt Email 2.  This communication shows that GWhitt intended that the effects of his email, namely the dismissal of the pending bankruptcy proceeding, would occur in Pennsylvania and affect the interests of the Pennsylvania Plaintiffs, some of which he named in his email.  *See id.* at 1-2.  Accordingly, these communications that GWhitt engaged in with Bielli, the United States Trustee in the Cloud b Bankruptcy, Cloud b's

Chapter 7 Trustee, and the attorneys for Cloud b in its bankruptcy proceedings evidences his express targeting of the forum sufficient to sustain jurisdiction over GWhitt.

In rebuttal, GWhitt contends that the fact that his communications ended up in Pennsylvania is insufficient to establish express targeting of the forum under the effects test. *See* Mot. 18. While it is true that "[t]he mere fact that email, phone calls, or regular mail end up in the forum state is not enough to show purposeful availment," GWhitt's communications did not merely "end up" in Pennsylvania. *See Weiser L. Firm*, 2020 WL 5993628, at *11. Rather, the aim of GWhitt's email to Bielli was clear: GWhitt wished to achieve, through his communication with Pennsylvania individuals, the dismissal of an ongoing legal process in the forum state. Therefore, it is unavailing for GWhitt to claim that his communications merely ended up in the forum state, and those communications are in fact sufficient to sustain jurisdiction over him.

Accordingly, when viewed as a whole, GWhitt's actions indicate that he expressly aimed the alleged tortious conduct at the forum state. The communications and resultant harm did not merely "end up" in Pennsylvania; they were directed at the forum. Therefore, the exercise of personal jurisdiction over GWhitt is appropriate.

### 3.    Agency Theory of Jurisdiction

Plaintiffs attempt to justify the exercise of jurisdiction over the remaining Whitt-DMilam Defendants by claiming that GWhitt acted "as the authorized agent and/or representative of the other Defendants" when he undertook the actions described above. *See* Am. Compl. ¶ 27. Here, Plaintiffs fail to set forth any allegations, let alone evidence, to support the existence of an agency relationship between GWhitt and the remaining Whitt-DMilam Defendants. Although the remaining Whitt-DMilam Defendants were parties to the California Lawsuit, jurisdiction on this basis alone is not appropriate. As this Court explained above, the actions taken by GWhitt

outside of the filing of the California Lawsuit rendered jurisdiction appropriate. Plaintiffs have failed to show that any of the remaining Whitt-DMilam Defendants had anything to do with the actions taken by GWhitt that were directed at Pennsylvania. Rather, Plaintiffs baldly allege that such actions were taken "as the authorized agent and/or representative of the other Defendants." *See id.* ¶ 285. Notwithstanding, Plaintiffs fail to come forth with any facts to support this allegation. Accordingly, this Court finds that the exercise of jurisdiction over AWhitt, MWhitt, CWhitt, and DMilam is inappropriate, and dismisses those parties from this action.

### 4. Plaintiffs are not entitled to Jurisdictional Discovery.

Plaintiffs request that, should this Court find a lack of jurisdiction over any Defendant, that Plaintiffs be permitted to undertake jurisdictional discovery. In an effort to establish jurisdiction over the Whitt-DMilam Defendants, Plaintiffs relied exclusively on the actions of GWhitt, arguing that the remaining Defendants are appropriately in this forum by function of an agency relationship. As Plaintiffs made no effort in the first instance to plead any contacts or expressly aimed conduct on the part of the other Whitt-DMilam Defendants, the only remaining issue upon which jurisdictional discovery could be granted is the existence of an agency relationship between GWhitt and the remaining Whitt-DMilam Defendants.

A court may reject a request for jurisdictional discovery where a Plaintiff does not set forth a prima facie case of personal jurisdiction. *Arch*, 984 F. Supp. at 841 (citing *Rose*, 813 F. Supp. at 321). Here, Plaintiffs fail to set forth a prima facie case for jurisdiction over the remaining Whitt-DMilam Defendants. As indicated above, Plaintiffs do not allege any facts to indicate the existence of an agency relationship between GWhitt and the remaining Whitt-DMilam Defendants. The fact that the Whitt-DMilam Defendants are all plaintiffs to the California Lawsuit, alone, is insufficient to establish a prima facie agency relationship.

Moreover, Plaintiffs fail to allege any involvement of the remaining Whitt-DMilam Defendants in the communications undertaken by GWhitt, beyond bald allegations that the communications were "authorized" by those remaining Defendants.  Accordingly, Plaintiffs have failed to set forth, with reasonable particularity, facts that would suggest that any such agency relationship even exists.  *Laverty*, 2019 WL 351905, at *5 (quoting *Toys "R" Us*, 318 F.3d at 456).  To permit jurisdictional discovery here would be to permit a fishing expedition based on bare allegations.  *Eurofins Pharma US Holdings*, 623 F.3d at 157 (citing *Belden Techs*, 626 F. Supp. 2d at 459).

Finding that Plaintiffs have failed to establish a prima facie case of jurisdiction or set forth facts that would suggest with reasonable particularity that an agency relationship exists between GWhitt and the remaining Whitt-DMilam Defendants, Plaintiffs' request for jurisdictional discovery is denied.

### B.       GWhitt's Venue Challenge

Next, GWhitt asserts that the Eastern District of Pennsylvania is an improper venue for this suit.  In support, GWhitt argues that nearly all of Plaintiffs claims relate to the filing of the California Lawsuit, and accordingly, the act giving rise to the claims took place outside of this venue.  In response, Plaintiffs point to actions taken in this venue that give rise to their claims.

Venue is appropriate in a district in which a substantial portion of the events giving rise to a claim took place.  *See* 28 U.S.C. § 1391(b).  After a review of the Amended Complaint, this Court finds that venue is appropriate in this district.  With respect to all of the claims alleged against GWhitt, Plaintiffs allege substantial activity in this district that gives rise to those claims.  Primarily, all of Plaintiffs claims are based on communications by GWhitt that were published in this district.  While it is true that GWhitt maintained the California Lawsuit against the Plaintiffs,

the Plaintiffs claims are not based exclusively on that suit.  Rather, they relate directly to allegedly defamatory and libelous communications made in this district by GWhitt.  Importantly, there may be more than one appropriate venue, and this Court need not decide the best venue for this matter.  *See Cottman Transmission Sys.*, 36 F.3d at 294 (citing *Setco Enters.*, 19 F.3d at 1281).  With that, this Court finds that venue in this district is appropriate over Plaintiffs' claims.

### C. GWhitt's Challenge to the Sufficiency of Plaintiffs' Allegations

GWhitt next moves to dismiss Plaintiffs' claims on the basis that they are insufficiently pleaded.  Before analyzing each claim, GWhitt makes an overarching argument that all of the communications upon which Plaintiffs' claims rely are absolutely privileged under Pennsylvania's judicial privilege.  *See* Mot. 27.  Notwithstanding, this argument is unavailing because, as the allegations in the Amended Complaint show, Plaintiffs' claims are based, at least in part, on extra-judicial communications.

Pennsylvania judicial privilege provides "immunity for communications which are made in the regular course of judicial proceedings and are material to the relief sought."  *See Church Mut. Ins. Co.*, 102 F. Supp. 3d at 730 (quoting *Schanne*, 121 A.3d at 947).  However, the privilege does not apply if the communication was extrajudicial or bears no relation to the proceedings.  *See id.* (citing *Bochetto*, 860 A.2d at 72–73 (noting attorney's transmission of complaint to a reporter was extrajudicial and not relevant to the proceedings)).  Here, Plaintiffs allege at least some extrajudicial communications by GWhitt that fall outside of the protections of the judicial privilege.  By way of example, GWhitt's email to Bielli was not made in the course of the ongoing judicial proceedings in California.  The focus of that letter was the

ongoing bankruptcy of Cloud b in the Eastern District of Pennsylvania.[14]   Rather than engage in the formal bankruptcy process, the allegations establish that GWhitt attempted to exert influence over the process through means of the extra-judicial email to Bielli.   Accordingly, because Plaintiffs' claims are, at least in part, based on extra-judicial communications, this Court turns to a review of each claim against GWhitt.

### 1.     Edison's Trade Libel Claim

In order to state a claim for trade libel, Edison must allege (1) a false publication, (2) the publisher's intent that the publication cause loss or the publisher's reasonable recognition thereof, (3) actual loss, and (4) that the publisher knew of the false nature of the publication or recklessly disregarded the same.  *See Maverick Steel*, 54 A.3d at 354.  When Edison's allegations are taken as true, it has alleged at least some statements that suffice to state a claim for trade libel.

In its Amended Complaint, Edison alleges that GWhitt published false statements to third parties, including that

> (a) Edison Nation and/or CFerguson and/or McFillin engaged in wrongful conduct in conspiring to take over Cloud b through its subsidiary's purchase of the EWBank Note in violation of a certain NDA; (b) Edison Nation defrauded the creditors of Cloud b, and the Whitt-Tai Complaint Plaintiffs, as minority shareholders, by promising to pay all of Cloud b's creditors as part of the purchase of 72% of Cloud b's stock; (c) Edison Nation's subsidiary CBAV1 did not own the Cloud b Assets . . . (e) Edison Nation engaged in conduct intentionally adverse to Cloud b, its creditors and minority shareholders . . . [and] (g) Edison Nation promised that it would pay the unsecured creditors of Cloud b . . . .

---

[14]     Plaintiffs also allege that defamatory communications were made to bankruptcy trustees, the SEC, creditors of Cloud b, and investors of Edison.  *See* Am. Compl. ¶ 286.  These communications are also considered extrajudicial communications that would not qualify for the judicial privilege.

*See* Am. Compl. ¶ 285.  Moreover, Edison claims that these false statements were published to numerous third parties including Cloud b's counsel, Cloud b's Chapter 7 Trustee, CBAV1's Chapter 11 Trustee, unsecured creditors of Cloud b, the Securities and Exchange Commission, and investors of Edison.  *See* Am. Compl. ¶ 286.  GWhitt argues that this publication is protected by Pennsylvania's judicial privilege.  This argument is unavailing.  Taking the allegations in the Amended Complaint as true, the publication of these statements to bankruptcy trustees, the SEC, creditors of Cloud b, and investors of Edison is not made in the regular course of litigation and bears no relation to the ongoing California Lawsuit.  This sort of publication is more akin to transmission of a complaint to a reporter.  *See Bochetto*, 860 A.2d at 72–73 (noting attorney's transmission of complaint to a reporter was extrajudicial and not relevant to the proceedings). Accordingly, these communications are not shielded by the judicial privilege, and they may be actionable as libelous.

In addition, for at least some of these statements, Edison plausibly alleges that GWhitt knew of the falsehood of his statements or, at a minimum, recklessly disregarded the same.  By way of example, Edison alleges that CBAV1 purchased the assets of Cloud b at an Article 9 sale. *See* Am. Compl. ¶¶ 41-42.  Notwithstanding, as Edison alleges, GWhitt disregarded that fact in making statements that CBAV1 did not own Cloud's assets.  Edison also alleges that, at a minimum, GWhitt should have reasonably recognized that false statements such as these would lead to pecuniary loss to Edison.  Put another way, it is reasonably predictable that a company could suffer financially adverse results if stakeholders were led to believe that the company did not actually own assets that it claimed to own.  Finally, Edison alleges that it did in fact suffer loss including the loss of financing opportunities with existing and potential investors.

Taking its allegations as true, Edison has sufficiently stated a claim for trade libel against GWhitt.  Accordingly, GWhitt's motion to dismiss this claim is denied, and the claim may proceed.

### 2.      CFerguson's Defamation Claim

In order to state a claim for defamation, CFerguson must allege (1) a communication of defamatory character, (2) publication thereof, (3) application to CFerguson, (4) an understanding by the recipient of its defamatory meaning, (5) an understanding by the recipient of the applicability of the statement to CFerguson, and (6) special harm, or defamation per se.[15]  *See* 42 PA. CONS. STAT. § 8343(a).

Beginning with the defamatory statements, CFerguson only alleges two statements that relate to him directly.  First, CFerguson alleges that GWhitt made a defamatory statement when he said that "Edison Nation and/or CFerguson and/or McFillin" violated a non-disclosure agreement when they purchased the EWBank note.  *See* Am. Compl. ¶ 296.  This communication is alleged in list form with a litany of other communications that do not involve CFerguson.  *See id.*  In a separate allegation identical to Plaintiffs' other defamation and libel claims, CFerguson alleges that this communication, among the others, was published to a long list of individuals.  *See id.* ¶ 297.  The list does not separate out which claims were communicated to which individuals, only generally alleging that the list of claims was communicated to the list of individuals.  Accordingly, with no allegations as to which recipients received this particular statement, CFerguson has failed to plead a number of the elements of a defamation claim.  Most notably, having failed to identify who received this particular statement,

---

[15]     Defendants do not raise "conditional privilege" as a defense.  Accordingly, CFerguson need not address it here.  *See* 42 PA. CONS. STAT. § 8343(a) (indicating plaintiff bears the burden of proving these matters "when the issue is properly raised").

CFerguson has failed to plead that the recipient understood the defamatory character of the statement and understood its applicability to CFerguson.  Accordingly, CFerguson has failed to plead a claim of defamation against GWhitt with respect to this statement.

CFerguson's only other allegation relating to statements made about him is his allegation that "upon information and belief, after October 22, 2020, GWhitt continued to make statements to third parties including, but not limited to, the chapter 7 trustee and her counsel in the Cloud b Chapter 7 Bankruptcy, accusing CFerguson of engaging in fraud and other illegal conduct."  *See* Am. Compl. ¶ 297.  This allegation again falls short of plausibly alleging a claim of defamation. CFerguson fails to allege the actual contents of the statements, the recipients of the statements, or whether those recipients understood the defamatory character and applicability of the statement to CFerguson.  Accordingly, GWhitt's motion to dismiss CFerguson's claim of defamation is granted, and CFerguson's claim of defamation against GWhitt is dismissed without prejudice.

### 3.    McFillin's Defamation Claim

In order to state a claim for defamation, McFillin must allege (1) a communication of defamatory character, (2) publication thereof, (3) application to McFillin, (4) an understanding by the recipient of its defamatory meaning, (5) an understanding by the recipient of the applicability of the statement to McFillin, and (6) special harm, or defamation per se.[16]  *See* 42 PA. CONS. STAT. § 8343(a)

McFillin points to two sets of statements that he alleges qualify as defamatory. Beginning with the first, McFillin alleges that GWhitt communicated that "Edison Nation and/or CFerguson and/or McFillin engaged in wrongful conduct in conspiring to take over Cloud b

---

[16]    Defendants do not raise "conditional privilege" as a defense.  Accordingly, McFillin need not address it at this stage.  *See* 42 PA. CONS. STAT. § 8343(a) (indicating plaintiff bears the burden of proving these matters "when the issue is properly raised").

through its subsidiary's purchase of the EWBank Note in violation of a certain [non-disclosure agreement]." *See* Am. Compl. ¶ 307.  This communication is identical to that which CFerguson used to support his defamation claim.  Accordingly, just as CFerguson's allegation regarding this communication was insufficient to sustain a claim of defamation, so too is McFillin's allegation regarding this communication.

Next, McFillin alleges that GWhitt's email to Bielli contained defamatory statements regarding McFillin.  *See id.* ¶ 309.  Although McFillin does not allege which statements are defamatory, there are two identifiable statements that may take on a defamatory character.  First, the email states that McFillin "disregarded [his] duties as [a] director[]" of Cloud b.  *See* GWhitt Email 2.  Taking McFillin's allegations as true, the defamatory character of this statement is apparent.  Namely, falsely communicating that a director disregarded his duties could cause harm to that individual's reputation and character.  Second, the email states that McFillin's actions with respect to the Cloud b bankruptcy filing "are probably deliberate, and could be considered acts of bankruptcy fraud." *See id.*  Similar to the prior statement, the defamatory character of this statement is also apparent, in that falsely accusing one of bankruptcy fraud could similarly harm their reputation.

Moving to the second element, McFillin has shown publication of the statement, in that it was sent via email to Bielli and was copied to Scott Carlson, Tai, AWhitt, CFerguson, Vroman, and KFerguson.  *See id.*  Third, McFillin has shown the application of the statements to him, insofar as the statements explicitly name him.  Fourth, McFillin  has sufficiently pleaded that a recipient of this email would understand the remarks regarding his disregard for fiduciary duties and violation of bankruptcy law to be defamatory.  Fifth, because the email directly named

McFillin, he has sufficiently pleaded that the recipient would understand the defamatory statement to apply to him.

Sixth and finally, McFillin need not plead special damages in this case because the excerpted statements from the GWhitt email constitute defamation per se. *See Mallory*, 260 F. Supp. 3d at 365. GWhitt's statement regarding McFillin's disregard of fiduciary duties falls within the "business misconduct" category of defamation per se. *See id.* (quoting *Synygy, Inc.*, 51 F. Supp. 2d at 580). Similarly, GWhitt's statement involving McFillin's conduct as bankruptcy fraud falls within the "criminal offense" category of defamation per se. *See id.* Accordingly, McFillin need only plead general damages, or "that one's reputation was actually affected by the slander or that one suffered personal humiliation." *See Synygy*, 51 F. Supp. 2d at 581 (citing *Walker v. Grand Cent. Sanitation, Inc.*, 634 A.2d 237, 242 (Pa. Super. Ct. 1993)). Here, McFillin alleges that he suffered both reputational harm as a result of the statements as well as personal humiliation in the form of public contempt, ridicule, shame, and the threat of criminal investigation. *See* Am. Compl. ¶ 316.

Taking the allegations as true, McFillin has sufficiently pleaded a claim of defamation against GWhitt, and accordingly, GWhitt's motion to dismiss McFillin's defamation claim is denied.

### 4.    Plaintiffs' Abuse of Process Claim

To state a claim for abuse of process, Plaintiffs must allege that GWhitt (1) used a legal process against Plaintiff, (2) to accomplish an improper purpose, and (3) that harm resulted to Plaintiff. *See EMC Outdoor*, 2018 WL 3208155, at *3 (quoting *Naythons*, 2008 WL 1914750, at *3). The inquiry focuses on how the process is used *after* filing of the suit, rather than the motives that undergird the filing itself. Accordingly, to the extent Plaintiffs support their abuse

of process claim by pointing to an improper motive for GWhitt's filing of the California Lawsuit, they have failed to state a claim.  Notwithstanding, this Court reviews Plaintiffs' allegations of conduct occurring after the filing of the California Lawsuit.  Following a review of those allegations, this Court concludes that Plaintiffs have failed to state a claim.

Plaintiffs note three instances of alleged abuse of process in their Amended Complaint that occurred after the filing of California Lawsuit.  Essentially, Plaintiffs claim that GWhitt transmitted the California Lawsuit complaint to (1) the U.S. Trustee and its counsel, (2) Cloud b's bankruptcy counsel, and (3) CBAV1's bankruptcy trustee.  Notwithstanding, Plaintiffs do not explain how transmitting a copy of a complaint amounts to the use of process.  The one communication that Plaintiffs do attach to their Amended Complaint is instructive.  Plaintiffs attach a copy of the email sent from GWhitt to Bielli regarding Cloud b's bankruptcy filing.  To be sure, GWhitt references the existence of the California Lawsuit in the letter.  However, at no point in the letter does GWhitt attempt to use that lawsuit "as a tactical weapon to coerce a desired result."  *See Ciolli*, 625 F. Supp. 2d at 296 (*Al Hamilton Contracting*, 644 A.2d at 191). Plaintiffs fail to allege how mere reference to an active lawsuit—or transmission of a publicly-available complaint filed therein—without more, constitutes abuse of process.

Plaintiffs fail to allege that GWhitt abused legal process to their detriment after the initiation of the California Lawsuit, and accordingly, Plaintiffs' claim for abuse of process is dismissed without prejudice.

### 5.    McFillin's Civil Extortion Claim

In order to state a claim for civil extortion under California law, McFillin must allege that GWhitt used fear to induce the transfer of property from McFillin to GWhitt.  *See* CAL. PENAL CODE § 518.  Put another way,  McFillin must allege that GWhitt threatened civil or criminal

prosecution and demanded the transfer of some property from McFillin to himself.  Here, even assuming arguendo that McFillin has sufficiently alleged that GWhitt threatened civil or criminal prosecution, McFillin fatally fails to allege any demanded transfer or property or any actual transfer of property.

McFillin bases his claim for civil extortion entirely on the email sent by GWhitt to Bielli on November 29, 2020.  *See* GWhitt Email.  In that email, GWhitt sought to have Bielli dismiss the ongoing Cloud b bankruptcy matter.  In an effort to support that GWhitt demanded property from McFillin, McFillin attempts to liken this case to *People v. Cadman*, 57 Cal. 562 (Cal. 1881).  First, McFillin cites *Cadman* for the proposition that an appeal is "property" within the meaning of the California Penal Code.  However, this is a clear misstatement of the case law.  In *Cadman*, the defendant addressed a letter to the plaintiff, instructing that he either withdraw his appeal in a separate ongoing case or risk having damaging personal details about him made public.  *See id.* 562-63.  In its opinion, the California Supreme Court indicated that it was *assuming* that "the right to take and prosecute an appeal is property within the meaning of the [California Penal] Code . . . ."  *See id.* at 564.  Contrary to McFillin's assertion, that court *did not* hold that the right to take and prosecute an appeal was property within the meaning of the California Penal Code.

Moreover, even if the California Supreme Court had held that the right to take an appeal was itself "property," the factual distinctions between *Cadman* and the present case make it wholly inapposite.  McFillin's attempts to analogize himself to Cadman are unavailing.  Cadman was the party who prosecuted the underlying suit and who held the right of appeal.  *See Cadman*, 57 Cal. At 562-63.  Put another way, Cadman was the holder of the property to be extorted.  *See id.*  Accordingly, it is conceivable that Cadman had a financial stake in his right to appeal.  Here,

McFillin is not the party seeking bankruptcy; rather, he is corporate counsel to the party seeking bankruptcy.  Importantly, McFillin was not the direct recipient of the email that he claims extorted him.  Rather, the email was sent to Bielli, and the email itself requested that Bielli dismiss the bankruptcy action.  Accordingly, given that McFillin did not hold any property with respect to the bankruptcy action, it is unclear what, if any, property GWhitt could have sought to have transferred from McFillin to himself.[17]

 McFillin fails to plead that GWhitt demanded the transfer of property that is necessary to state a claim for civil extortion under California law.  Accordingly, this claim is dismissed without prejudice.

### 6.    Plaintiffs' UCL Claim

In order to show that the non-resident Plaintiffs have standing to bring a UCL claim, they must allege that either the unlawful conduct or the resultant injury took place in California. *Tidenberg*, 2009 WL 605249, at *3 (citing *Nw. Mortgage*, 72 Cal. App. 4th at 224-25).  Here, Plaintiffs sufficiently allege that the conduct that violates the UCL took place in California. Namely, Plaintiffs allege that GWhitt made the communications underlying their trade libel claim from locations in California.  *See* Am. Compl. ¶ 236.  Accordingly, Plaintiffs have established that they have standing to bring their UCL claim.

Plaintiffs' response in opposition to GWhitt's motion to dismiss makes clear that they intend to bring a claim under the "unfairness" component of the UCL.  *See* Resp. 54.  Courts in California have permitted UCL claims under the "unfairness" component to proceed where a

---

[17]    Plaintiffs' effort to allege that GWhitt sought the transfer of $8,000,000 from McFillin is unavailing.  *See* Resp. 61.  As this Court indicates above, McFillin's civil extortion claim is based solely on the email sent from GWhitt to Bielli.  Nowhere in that email does GWhitt demand McFillin pay a sum of $8,000,000.  Accordingly, this allegation is implausible.

plaintiff alleges a viable defamation claim.  *See, e.g.*, *Hawran v. Hixson*, 147 Cal. Rptr. 3d 88, 106 (2012) (noting "UCL claim is derivative of [plaintiff's] defamation cause of action, that is, it is based on the same assertedly false and defamatory press release statements, and likewise that cause of action stands or falls with that underlying claim").

Here, because Plaintiffs have alleged a viable trade libel claim against GWhitt, their UCL claim may proceed on the same theory.  However, this Court cautions that Plaintiffs may only seek certain remedies under their UCL claim.  *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (Cal. 2003) (citing *Bank of the West*, 2 Cal. 4th at 1266).  Accordingly, "[p]revailing plaintiffs are generally limited to injunctive relief and restitution."  *See id.* (quoting *Cel-Tech Comms., Inc. v. L.A. Cell. Tele. Co.*, 20 Cal. 4th 163, 180 (Cal. 1999)).

Taking the allegations as true, Plaintiffs have sufficiently pleaded a violation of the UCL based derivatively on their claim for trade libel against GWhitt.  Accordingly, this claim may proceed and GWhitt's motion to dismiss this claim is denied.

### 7.    Plaintiffs' Conspiracy Claim

In order to state a claim for conspiracy, Plaintiffs must allege a combination of two or more individuals who committed an overt act in furtherance of the same common purpose to the detriment of Plaintiffs.  In support, Plaintiffs allege, at multiple places in the Amended Complaint, that GWhitt undertook his unlawful actions "as the authorized agent and/or representative of the other Defendants."  *See, e.g.*, Am. Compl. ¶ 307.  Plaintiffs also allege that GWhitt acted "in concert with, and as an authorized agent and/or representative for MKW, MMilam, Knecht, Ours, AWhitt, MWhitt, CWhitt and DMilam."  *See id.* ¶ 20.

These conclusory allegations are insufficient to sustain a claim of civil conspiracy against the Whitt-DMilam Defendants.  *See Pinder*, 2019 WL 1115892, at *3 (dismissing civil

conspiracy claim where complaint failed to ascribe any particular actions to the alleged co-conspirators).  Plaintiffs fail to allege any facts that would support an agreement between the Whitt-DMilam Defendants.  Moreover, with the exception of GWhitt, Plaintiffs make no effort to allege that any of the remaining Whitt-DMilam Defendants took any actions in furtherance of this alleged conspiracy.  That the Whitt-DMilam Defendants appear as plaintiffs in the California Lawsuit is insufficient to establish that they conspired with GWhitt to engage in unlawful activity.

Accordingly, Plaintiffs fail to allege facts sufficient to sustain a claim of civil conspiracy, and therefore, the claim is dismissed without prejudice.

## V.      CONCLUSION

Following this Court's review of the Whitt-DMilam Defendants' Motion to Dismiss, the motion is granted in part and denied in part.  Jurisdiction is appropriate over GWhitt; however, jurisdiction is not appropriate over the remaining Whitt-DMilam Defendants.  Accordingly, AWhitt, CWhitt, MWhitt, and DMilam are dismissed from this action.  Venue in this district is appropriate over those claims that involve GWhitt.

After reviewing the sufficiency of the allegations that support the claims against GWhitt, the following claims against GWhitt may proceed as pleaded:

(1)     Edison's trade libel claim;

(2)     McFillin's defamation claim; and

(3)     Plaintiffs' UCL claim.

The following claims are dismissed without prejudice:

(1)     CFerguson's defamation claim;

(2)     Plaintiffs' abuse of process claim;

(3)    McFillin's civil extortion claim; and

(4)    Plaintiffs' conspiracy claim.

These four claims are dismissed without prejudice as this Court cannot say at this time whether further amendment would be inequitable or futile.  *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) (holding that "even when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile").  Accordingly, Plaintiffs are granted leave to amend their Amended Complaint to the extent that they can resolve the factual deficiencies outlined in this Court's Opinion.

A separate Order follows.

BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge